UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

IRISH MATHIS WHITE,

               Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

Case No.  1:22-cv-00615-BAM

**ORDER REGARDING PLAINTIFF'S
SOCIAL SECURITY COMPLAINT AND
DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT**

(Docs. 10, 12)

## **INTRODUCTION**

Plaintiff Irish Mathis White ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits under Title II of the Social Security Act and for supplemental security income under Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 5, 6, 8.)

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court will deny Plaintiff's appeal, grant Defendant's cross-motion for summary judgment, and affirm the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on November 15, 2019.  AR 15, 250-56, 257-68.[2]  Plaintiff alleged that she became disabled on June 2, 2017, due to a herniated disc, chronic cervical synopsis, nerve root issues, hyperthyroid, left rotator cuff tear, tendinopathy of left biceps, arterial enlargement, and septal infarct.  AR 111, 288.  Plaintiff's applications were denied initially and on reconsideration.  AR 111-15, 123-28. Subsequently, Plaintiff requested a hearing before an ALJ.  Following a hearing, ALJ Laureen Penn issued an unfavorable decision on March 24, 2021.  AR 12-25, 31-52.  Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making the ALJ's decision the Commissioner's final decision.  AR 1-5.  This appeal followed.

**Hearing Testimony**

On March 25, 2021, ALJ Penn held a telephonic hearing.  Plaintiff appeared by telephone and was represented by her attorney, Jeffrey Duarte.  Kimberly Mullinax, an impartial vocational expert, also appeared by telephone.  AR 33.

In response to questions from her attorney, Plaintiff testified that she stopped working in 2017 because of pain in her neck, back, left shoulder, right knee, arms, and hands, along with numbness in her hands and feet.  Her neck got more severe with pulling, tightness, stiffness, and spasms.  Her lower back would get numbness, throbbing, pain, and aching constantly.  She had pain down her left arm and hands with numbness and tingling.  The doctor recommended surgery for her left shoulder, but COVID-19 prevented her from the scheduled surgery.  She does not intend to have surgery in the

_____

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

future because she does not want to take any chances.  She has pain in her hands and wears a brace on her right hand.  She also experiences numbness in both hands.  She has problems gripping and grasping with her left hand because of issues in her shoulder.  She has to use both hands to lift and pick things up.  With her feet, she has pain because of plantar fasciitis, and she has been diagnosed with arthritis in her ankles.  She was treated with a cortisone shot for her plantar fasciitis.  AR 36-40.

Plaintiff also testified that she has been treating with Nurse Practitioner Prophete since 2019 and sees her once a month or every six weeks.  AR 40-41.

When asked about how her symptoms affect her ability to perform daily chores and activities, Plaintiff testified that on a normal day, the pain in her back is always there when she washes dishes, stands, cooks, cleans up, mops the floor, and makes her bed.  She also has problems using her arms to reach up and down and left to right.  She has pain when she combs her hair, uses the bathroom, and puts on her clothes.  She can stand about 5-10 minutes before she has to sit down.  She can walk no more than 5-10 minutes before she has to take a break.  She can sit about 45 minutes at a time.  She also needs to avoid stressful situations to avoid aggravating her blood pressure.  She has it under control now, but tries not stress herself out because of it.  She is on two blood pressure medications, changed her diet, does a little exercise, and uses her cervical machine.  AR 41-43.

In response to questions from the ALJ, Plaintiff testified that she can lift and carry 10 pounds. She can walk about half a block.  She uses cervical traction and a TENS machine.  During a normal day, in addition to household chores, she watches TV, reads, and does adult coloring books and puzzles.  She also gets on the internet every now and then, and goes for rides around town with her husband.  Her husband helps mop the floors and wash the dishes.  The only medication side effect is from Tramadol, which causes drowsiness.  AR 43-45.

Following Plaintiff's testimony, the ALJ elicited testimony form the VE.  The VE classified Plaintiff's past work as general clerk, DOT 209.562-010.  The ALJ also asked the VE hypothetical questions.  For the first hypothetical, the ALJ asked the VE to assume a person of the same age, education, and past work.  This person also could lift and carry 20 pounds occasionally, 10 pounds frequently, could stand and walk for six hours, and could sit for six hours.  This person could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could not climb

ladders, ropes, or scaffolds.  This person could occasionally reach overhead with the bilateral upper extremities and could not have concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation.  The VE testified that this person would be able to do Plaintiff's past work and would be able do other work in the national economy, such as cashier II, fast food worker, marker, mail clerk, and sales attendant.  AR 46-47.

If the person in the first hypothetical could stand and walk for four hours, the VE testified that Plaintiff's past work as general clerk would be available, and the cashier II position would work with an erosion of the numbers.  If the person were limited to frequent handling and fingering bilaterally, the VE testified that the person could still do the past work as general clerk.  If the person were limited to occasionally being able to handle and finger bilaterally, the VE testified that the person could not perform Plaintiff's past work.  The VE further testified that if the the person would miss six days a year, then the person could perform Plaintiff's past work, but if there were ongoing unscheduled absences, then the employer would likely provide disciplinary action and possible termination.  The VE testified that an employer would tolerate approximately 10 percent off-task work per day and that anything more on a persistent or ongoing basis would likely lead to termination of employment.  AR 47-50.

In response to questions from Plaintiff's attorney, the VE testified that Plaintiff would be able perform her past work as defined in the Dictionary of Occupational Titles ("DOT"), but not as performed.  AR 50-51.  The VE also testified that with a limitation to sedentary work, Plaintiff would not be capable of performing her past relevant work.  AR 51.

The VE confirmed that her testimony was consistent with the DOT.  However, she relied on her professional work experience and statistical data in testifying about absences, off-task behaviors, overhead reaching, standing and walking for four hours, and anything else that was not covered in the DOT.  AR 51.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

///

4

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 15-25.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 2, 2017, her alleged onset date.  AR 17-18.  The ALJ identified the following severe impairments:  degenerative disc disease of the cervical and lumbar spine with lumbar radiculopathy, shoulder impingement, goiter, hypothyroidism, hypertension, plantar fasciitis, osteoarthritis of the right foot and ankle, peroneal tendinitis of the left leg, and obesity.  AR 18-19.  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 19-20.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could not climb ladders, ropes, or scaffolds. She could frequently handle and finger bilaterally, could occasionally reach overhead with the bilateral upper extremities, but could not have concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation.  AR 20-24.  With this RFC, the ALJ found that Plaintiff was capable of performing past relevant work as a general clerk.  AR 24-25.  The ALJ therefore concluded that Plaintiff had not been under a disability since June 2, 2017, through the date of the decision.  AR 25.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the

1   Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

2   evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,*

3   *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

4   determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

5   and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

6   *Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

### REVIEW

8   In order to qualify for benefits, a claimant must establish that he or she is unable to engage in

9   substantial gainful activity due to a medically determinable physical or mental impairment which has

10   lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §

11   1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such

12   severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

13   her age, education, and work experience, engage in any other kind of substantial gainful work which

14   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

15   burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

16   1990).

### DISCUSSION[3]

18   Plaintiff asserts that the ALJ erred (1) in concluding that Plaintiff could perform her past

19   relevant work; (2) by failing to properly assess Plaintiff's symptoms in accordance with Social

20   Security Ruling 16-3p; and (3) by failing to limit Plaintiff's RFC to less than sedentary based on the

21   reporting of Plaintiff's treating provider, L. Prophete, NPC.  (Doc. 10 at pp. 4-5.)

22   **A.  Past Relevant Work and Vocational Expert Testimony**

23   The ALJ reached an RFC determination that Plaintiff is capable of light work, with additional

24   environmental and functional restrictions, including a limitation to occasional overhead reaching with

25   the upper extremities.  AR 20.  The VE testified that, with this RFC, Plaintiff was capable of

---

27   [3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including
28   arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific
argument or brief is not to be construed that the Court did not consider the argument or brief.

performing her past relevant work as a general clerk, DOT Code 209.562-010.  At step four of the

sequential evaluation, relying on the VE's testimony, the ALJ determined that Plaintiff was not

disabled because she could perform her past relevant work as a general clerk.  AR 24-25.  Plaintiff

argues that the ALJ erred in concluding that Plaintiff could perform her past relevant work because

there is a conflict between her RFC and the job requirements of general clerk.

At step four of the disability determination, it is the claimant's burden to demonstrate she

cannot perform her past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

Although the claimant bears the burden of showing that she cannot perform such work, the ALJ must

still make the requisite factual findings to support the step-four conclusion. *Id.*   An ALJ may rely on

the testimony of a vocational expert to determine if a claimant can perform her past relevant work.

*Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007).  However, if the VE's opinion "conflicts

with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert

to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Gutierrez v.

Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (citing Social Security Ruling ("SSR") 00-4P, 2000 WL

1898704, at *2 (2000)).  For a difference between a VE's testimony and the DOT "to be fairly

characterized as a conflict, it must be obvious or apparent."  *Id.* at 808.  "This means that the

testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or

expected." *Id.*

In this case, Plaintiff asserts that the RFC limitation to occasional overhead reaching bilaterally

conflicts with the DOT listing for general clerk.  (Doc. 10 at pp. 5-8.)  She points out that, according to

the DOT, the job of Clerk, General requires frequent reaching, and she argues that this requirement is

incompatible with the limitation in her RFC to occasional overhead reaching with the bilateral upper

extremities.  AR 20; *see* Clerk, General, DICOT 209.562-010, 1991 WL 671792 (1991) ("Reaching:

Frequently - Exists from 1/3 to 2/3 of the time.").

In *Gutierrez v. Colvin*, the Ninth Circuit rejected a similar argument in connection with the

occupation of cashier, concluding "the ALJ didn't err because there was no apparent or obvious

conflict between the expert's testimony that [plaintiff] could perform as a cashier, despite her weight

bearing and overhead reaching limitations with her right arm, and the [DOT's] general statement that

cashiering requires frequent reaching." 844 F.3d at 808. In so concluding, the court explained that "[w]hile 'reaching' connotes the ability to extend one's hands and arms 'in any direction,' not every job that involves reaching requires the ability to reach overhead." *Id.* (quoting Social Security Ruling 85-15, 1985 WL 56857, at *7 (1985)). The Ninth Circuit expressed that the inquiry as to whether there is an apparent and obvious conflict was fact-dependent and found no obvious conflict because of "how uncommon it is for most cashiers to have to reach overhead." *Id.*

Like the DOT listing for "cashier" discussed in *Gutierrez*, 844 F.3d at 807, the DOT listing for "Clerk, General" does not specifically indicate that overhead reaching is frequently required. Indeed, the description of a general clerk's duties in the DOT does not suggest a need to reach overhead at a frequent rate. The DOT description states:

> Performs any combination of following and similar clerical duties requiring limited knowledge of systems or procedures: Writes, types, or enters information into computer, using keyboard, to prepare correspondence, bills, statements, receipts, checks, or other documents, copying information from one record to another. Proofreads records or forms. Counts, weighs, or measures material. Sorts and files records. Receives money from customers and deposits money in bank. Addresses envelopes or packages by hand or with typewriter or addressograph machine. Stuffs envelopes by hand or with envelope stuffing machine. Answers telephone, conveys messages, and runs errands. Stamps, sorts, and distributes mail. Stamps or numbers forms by hand or machine. Photocopies documents, using photocopier.

Clerk, General, DICOT 209.562-010, 1991 WL 671792.

The DOT description does not include responsibilities that appear to require frequent overhead reaching. Moreover, Plaintiff fails to demonstrate that frequent overhead reaching is an essential, integral, or expected requirement for a general clerk  The Court therefore concludes that there is no obvious conflict between the VE's testimony and the DOT, and the ALJ did not err in relying on the VE's testimony that Plaintiff could perform her past relevant work.[4] *See Correia v. Comm'r of Soc. Sec.*, No. 2:20-cv-01139-JDP (SS) 2023 WL 2058894, at *7 (E.D. Cal. Feb. 16, 2023) (rejecting similar argument by a plaintiff limited to occasionally reaching overhead with her right upper

---

[4] Based on this determination, it is unnecessary to reach Plaintiff's argument that if she is unable to perform her past relevant work, then she would qualify for Title II benefits based on Social Security Grid Rule 202.06. (Doc. 10 at pp. 8-9.)

extremity where DOT description did not "specifically indicate that overhead reaching [was] frequently required" and "the occupation summary [did] not include responsibilities that appeared to require frequent overhead reaching").

### B. Symptom Testimony

Plaintiff argues that the ALJ failed to properly assess her symptom testimony.

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson*, 359 F.3d at 1196; SSR 16-3p. First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 21. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided specific, clear and convincing reasons to discount Plaintiff's subjective complaints. First, the ALJ found that Plaintiff's "alleged inability to lift more than ten pounds[,] walk for more than a mile/fifteen minutes, stand for more than fifteen minutes, or sit for more than forty-five minutes to an hour are not entirely consistent with the record given her generally normal gait, strength, and range of motion despite some observed tenderness to palpation and limited range of motion at some treatment visits." AR 23. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch*, 400 F.3d at 681. Here, for example, the ALJ cited objective examination evidence demonstrating normal range of motion (AR 402, 416 [normal range of motion in neck and cervical back], 419, 693, 730-31, 865, 971, 1036-37, 1126, 1156, 1360, 1365), normal gait (AR 410, 428, 439, 985, 1020, 1075, 1218), and normal muscle strength (AR 1335, 1338). AR 23. The ALJ reasonably

determined that this evidence was not consistent with Plaintiff's asserted lifting, walking, standing, and sitting limitations.

Second, the ALJ considered that Plaintiff's allegedly disabling pain in her upper extremities was being treated conservatively and controlled with gabapentin and tramadol. AR 22. An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment). The ALJ acknowledged Plaintiff's testimony that she was considered a surgical candidate and she was no longer interested, but she nonetheless was treated conservatively with gabapentin and tramadol. AR 22 (citing AR 372 (gabapentin, tramadol).  The ALJ also noted that the record did not indicate use of cervical traction or nerve stimulators.  AR 23.

Additionally, the ALJ considered that these conservative measures were effective.  AR 22. The effectiveness of medication or treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Plaintiff primarily challenges the ALJ's assessment of her subjective complaints on the basis that the ALJ did not explicitly mention every factor set forth in SSR 16-3p in evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms.  Plaintiff's argument is not persuasive.  The factors in SSR 16-3p are a recitation of the factors set forth in the regulations at 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). SSR 16-3p, 2017 WL 5180304, at *7.  The regulations state only that the ALJ will consider these factors and not that the ALJ is required to specifically discuss each of these factors in the opinion.  *See, e.g., Williams v. Comm'r of Soc. Sec.*, No. 1:21-CV-01000-SAB, 2022 WL 3030270, at *4 (E.D. Cal. Aug. 1, 2022) (disagreeing with plaintiff's argument that ALJ required to "develop a written record concerning consideration of every factor" set forth in 20 C.F.R. § 404.1529(c)(3)); *Torres v. Comm'r of Soc. Sec.*, No. 1:19-CV-00067-SAB, 2020 WL 91996, at *5

(E.D. Cal. Jan. 8, 2020) (concluding ALJ not required to specifically discuss each of the factors set forth in 20 C.F.R. § 404.1529(c)).  Similarly, SSR 16-3p does not require the ALJ to discuss expressly each of these factors.  SSR 16-3p, 2017 WL 5180304, at *8 (The ALJ need only evaluate "the factors that are relevant to assessing the intensity, persistence, and limiting effects of the [claimant's] symptoms.").

Plaintiff also appears to challenge the ALJ's findings by citing to MRI and x-ray results identifying diagnoses regarding her left shoulder and cervical spine.  (Doc. 10 at pp. 11-12.)  However, "[t]he mere existence of an impairment is insufficient proof of a disability."  *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).  Plaintiff also refers the Court to certain treatment records that purport to interpret Plaintiff's diagnostics and relate them to her symptoms.  (Doc. 10 at pp. 13-14, citing AR 394-95, 1010-12, 416, 822-23, 863, 928, 1359, 436, 475, 479.)  The bulk of these cited records relate to Plaintiff's left shoulder.  *See* AR 394 ("left shoulder with positive impingement signs"), 1011 (same), 416 ("Left shoulder:  She exhibits decreased range of motion and tenderness"), 822-23 (left shoulder and neck pain), 863 (left shoulder). 1359 (left shoulder pain, opted to wait on surgery that was recommended).  However, the ALJ expressly considered Plaintiff's shoulder impingement, MRI and x-ray diagnostics of her left shoulder, and physical examination findings, but noted that Plaintiff generally had normal range of motion on examination, was no longer interested in surgery, and her pain was treated conservatively and controlled with medication.  AR 22.  The ALJ also accounted for limitations resulting from Plaintiff shoulder, which included a limitation to occasional overhead reaching with the bilateral upper extremities.  AR 20, 22.  To the extent Plaintiff suggests an alternative interpretation of the evidence, this is not sufficient to establish reversible error.  If the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020), citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

As to the remaining cited records, one set confirms the ALJ's determination that Plaintiff's symptoms improved with medication.  *See* AR 928 ("states she has taken tramadol in the past and it has helped"), 1359 (takes tramadol "on an as needed basis for her Left shoulder pain.  She has opted to wait on surgery that was recommended by orthopedics.").  The other set are not wholly relevant, as

they predate Plaintiff's alleged onset date and/or relate to intermittent balance issues, which is not one of Plaintiff's assertedly disabling conditions.  *See* AR 436 (intermittent vertigo), 475 (2016 - balance disorder), 479 (2016-"vertigo and ataxia, most likely related to vestibular neuronitis").

### C.  Evaluation of Medical Opinion – Nurse Practitioner Prophete

As a final matter, Plaintiff argues that the ALJ improperly evaluated the June 29, 2020 opinion of L. Prophete, NPC, her treating provider.  (Doc. 10 at p. 16.)

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions.  20 C.F.R. §§ 404.1520c and 416.920c.  Under the new regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a) and 416.920c(a).  The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c(c)(1)-(5) and 416.920c(c)(1)-(5).  Supportability and consistency are the most important factors.  20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2).  Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. §§ 404.1520c(c)(1) and 416.920c(c)(1); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. §§ 404.1520c(c)(2) and 416.920c(c)(2); *Woods*, 32 F.4th at 792.

Ninth Circuit case law preceding the new regulations afforded deference to the medical opinions of treating and examining physicians.  Indeed, prior to the current regulations, the Ninth Circuit required ALJs to provide clear and convincing or specific and legitimate reasons for rejecting the medical opinions of treating or examining physicians.  These standards of articulation no longer apply in light of the new regulations, and the ALJ is not required to provide "specific and legitimate

reasons" to discount the medical opinions. *See Woods*, 32 F.4th at 792 (finding revised social security regulations "clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant"). The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id.* (internal citations omitted).

Relevant here, NPC Prophete completed a Physical Residual Functional Capacity Questionnaire on June 29, 2020. AR 1048-51. She opined that Plaintiff could walk about 2-3 city blocks, sit for 30 minutes at one time, and stand for 30 minutes at one time. In an 8-hour workday, she could sit less than 2 hours and stand/walk less than 2 hours. She also would require periods of walking, every 30 minutes for 10 minutes each time, and would need unscheduled breaks every 30-45 minutes for 10-15 minutes. AR 1049-50. NPC Prophete further opined that Plaintiff could rarely lift less than 10 pounds, could rarely look down, look up, or hold her head in a static position, and could occasionally turn her head right or left. AR 1050. She could rarely twist, stoop, crouch/squat, or climb stairs, and could never climb ladders. She could grasp, turn, and twist objects with her hands about 5-10% in an 8-hour day, could use her fingers for fine manipulations for 5-10% of an 8-hour workday, and could reach with her arms 2-5% in an 8-hour workday. AR 1050-51. NPC Prophete estimated that Plaintiff would be absent from work more than four days per month. AR 1051. The ALJ found this opinion "unpersuasive." AR 23.

In asserting that the ALJ erred, Plaintiff argues that the ALJ failed "to properly address the treating physician's report." (Doc. 10 at p. 19.) To the extent this argument suggests that the ALJ was required to afford deference to NPC Prophete's opinion as a treating source, this suggestion lacks merit. Under the applicable regulations, the Commissioner does not defer or give any specific evidentiary weight to any medical opinion, including those from a claimant's medical sources. 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). Rather, the ALJ must evaluate the persuasiveness of the medical opinion.

In evaluating the persuasiveness of NPC Prophete's opinion, the ALJ reasoned as follows:

> This opinion was submitted on an attorney-provided checkbox form and not supported by rationale or accompanying treatment notes, grossly overstates the extent of the claimant's limitation, and is generally inconsistent with the evidence as whole showing the claimant to be less limited given her generally normal gait, strength, and range of motion despite some observed tenderness to palpation and limited range of motion at some treatment visits. (Ex. 17E/2, 2F/5, 3F/6, 14, 20, 23, 32, 43, 4F/134, 171, 210, 306, 5F/12, 26, 6F/6, 9, 7F/8, 8F/9, 10F/24, 78, 105, 11F/50, 12F/1, 4-5, 13F/2, 7). The undersigned finds this opinion unpersuasive.

AR 23.

Having considered this reasoning, the Court finds that the ALJ properly evaluated the persuasiveness of NPC Prophete's opinion.  First, the ALJ determined that the opinion was in checkbox form, not supported by any rationale or accompanying treatment notes, and grossly overstated the extent of Plaintiff's limitations.  AR 23.  This reasoning invokes the supportability factor, which means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. §§ 404.1520c(c)(1) and 416.920c(c)(1); *Woods*, 32 F.4th at 791-92.  As noted by the ALJ, the opinion was rendered on a "check-the-box" form and provides no explanation for the opined limitations.  The opinion also cites no diagnoses, clinical findings, or objective findings.  Indeed, those sections of the questionnaire are blank.   AR 1048-51

To demonstrate support for this medical opinion,  Plaintiff refers to NPC Prophete's treatment records.  (Doc. 10 at p. 19.)  This is not sufficient to establish error as Plaintiff offers no explanation as to how those records support NPC Prophete's extreme limitations, including that Plaintiff could rarely lift less than 10 pounds, could rarely look down, look up, or hold her head in a static position, could walk on 2-3 blocks, could sit for less than 2 hours, and could stand/walk for less than two hours out of an 8-hour workday.

Second, the ALJ determined that the opinion was generally inconsistent with the evidence as a whole showing the claimant to be less limited given her generally normal gait, strength, and range of motion despite some observed tenderness to palpation and limited range of motion at some treatment visits.  AR 23.  This reasoning expressly invokes the consistency factor, which "means the extent to

which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.' *Id.* § 404.1520c(c)(2)." *Woods*, 32 F.4th at 792; *see also* 20 C.F.R. § 416.920c(c)(2).  The ALJ supported this determination with citation to objective examination evidence demonstrating normal range of motion (AR 402, 416 [normal range of motion in neck and cervical back], 419, 693, 730-31, 865, 971, 1036-37, 1129, 1156, 1360, 1365), normal gait (AR 410, 428, 439, 985, 1020, 1075, 1218), and normal muscle strength (AR 1335, 1338).  AR 23.

Plaintiff claims that NPC Prophete's opinion is corroborated by the treatment record, citing only to a single record from Dr. Kerisimasi Reynolds.  (*See* Doc. 10 at p. 18, AR 394-95.)  This does not amount to corroboration with the treatment record as a whole.  Moreover, on physical examination, Dr. Reynolds noted that while Plaintiff's left shoulder showed positive impingement signs, she had "[r]otator cuff strength full range of motion with pain" and she was "[m]oving all limbs well."  AR 394.  These examination findings do not undermine the ALJ's determination.

### CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security, GRANTS Defendant's cross-motion for summary judgment, and AFFIRMS the agency's determination to deny benefits.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Irish Mathis White.

IT IS SO ORDERED.

Dated:   **June 12, 2023**                    /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE